UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| CONFLUENT, INC., | Case No. 24-cv-04447-SVK |
| Plaintiff, | **ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO DISMISS AND/OR STRIKE DEFENDANT'S AMENDED COUNTERCLAIMS** |
| v. | |
| SLOWER, LLC, | |
| Defendant. | Re: Dkt. No. 51 |

This action arises out of the breakdown of the business relationship between Plaintiff Confluent, Inc. ("Confluent") and Defendant Slower, LLC ("Slower"). On July 23, 2024, Confluent filed this suit. *See* Dkt. 1 ("Complaint"). On January 28, 2025, the Court granted in part and denied in part Slower's motion to dismiss, dismissing Confluent's causes of action for intentional interference with prospective economic advantage and trade secret misappropriation. *See* Dkt. 30 ("Prior Order"). After Confluent's deadline to amend the Complaint passed, Slower ultimately filed an answer and counterclaims (and amended the same). *See* Dkt. 47. Slower's operative answer pleads the following counterclaims: (1) breach of contract, (2) breach of the implied covenant of good faith and fair dealing, (3)-(4) misappropriation of trade secrets under the federal Defend Trade Secrets Act ("DTSA") and California Uniform Trade Secrets Act ("CUTSA") and (5) unfair business practices under Cal. Bus. & Prof. Code § 17200 (collectively, the "Amended Counterclaims"). *Id.* at 29-34. All Parties have consented to the jurisdiction of a magistrate judge. Dkt. 10, 19.

Before the Court is Confluent's motion to dismiss the Amended Counterclaims or strike portions thereof. Dkt. 51 (the "Motion"). The Motion is suitable for resolution without oral argument. Civil L.R. 7-1(b). Having considered the Parties' submissions, the relevant law and the record in this action, the Court **GRANTS IN PART** and **DENIES IN PART** the Motion.

## I.   BACKGROUND

The background herein is drawn from Slower's Amended Counterclaims, which serve as the "operative complaint" on a motion to dismiss counterclaims. *See Allbirds, Inc. v. Giesswein Walkwaren AG*, No. 19-cv-05638-BLF, 2020 WL 6826487, at *3 (N.D. Cal. June 4, 2020) ("For the purpose of a motion to dismiss counterclaims, the operative 'complaint' in the [Rule 12(b)(6)] standard is the counterclaims. … [T]he court must accept all factual allegations in the counterclaims as true, the allegations in the original complaint are not entitled to the presumption of truth, and the court does not consider the complaint or answer." (cleaned up) (internal citations omitted)).

### A.   Relevant Factual Background

Confluent is a company that "develops and sells subscriptions to a software data management platform that includes open source and proprietary components ("Confluent Software") and provides related services." Dkt. 47, Amended Counterclaims, ¶¶ 2, 7. Slower is a business consulting firm that "provides professional services to its customers including, but not limited to, IT consulting and engineering, data, cybersecurity, and cloud engineering." *Id.*, ¶ 5. Beginning in 2018, the Parties entered into "several agreements," the first of which was a "Master Consulting Agreement" ("Master Agreement") on September 10, 2018, "whereby Slower agreed to perform consulting and advisory services to Confluent's customers pursuant to statements of work ("SOW") in exchange for professional fees as set forth in the SOW." *Id.*, ¶ 8.

As alleged by Slower, during the course of the Parties' relationship, they entered into the following subsequent agreements:

- Various amendments and new versions of the Master Agreement, (*id.*, ¶ 8 n. 1);
- The Confluent Subscription Agreement for Managed Services ("Managed Services Agreement), and whereby "Confluent agreed to license the Confluent Software to Slower for Slower's use in selling a software solution to one of Slower's customers (referred herein as Customer F)," (*id.*, ¶ 9);
- A generic version of the Managed Services Agreement for "any additional Slower orders from Confluent for licensing of Confluent Software for managed service

agreements with [other] Slower customers," (*id.*, ¶ 9 n.2);

- The Confluent Standard Reseller Agreement ("Reseller Agreement"), whereby "Confluent appointed Slower to resell the Confluent Software and associated technical support services to customers … worldwide" subject to certain terms, (*id.*, ¶ 11);

- The Confluent Consulting and SI Partner Agreement ("Partner Agreement"), which governed "Slower's use of Confluent's trademarks in connection with the sales and marketing of Confluent's products and services and receiving benefits available under the Confluent Partner Program," (*id.*);  and

- The Partner Enablement Services Collaboration Agreement ("Partner Collaboration Agreement"), "whereby Slower paid Confluent $350,000 to have Confluent provide personnel support to Slower to assist with, *inter alia*, joint marketing efforts," (*id.*, ¶ 12).

"Over the years," Slower "invested time, money, and resources to develop its post-sales Center of Excellence Framework," ("COE Framework"), which Slower alleges is "a trade secret that contains Slower's specific processes, implementation strategies, and proposed initiatives for how to democratize the use and consumption of Confluent Platform and Confluent Cloud." *Id.*, ¶ 55.  In or about November 2020, Slower shared a copy of the COE Framework with Derek Kane, "Confluent employee and Account Executive for various Slower-Confluent customer accounts," allegedly after being "assured" that it would not be shared with anyone, including internally at Confluent. *Id.*, ¶¶ 58-60.

Slower's counterclaims are based on two categories of conduct.  First, they are based on Confluent's alleged conduct in relation to certain of Slower's customers (identified as customers "A" through "F" in the Amended Counterclaims). *Id.*, ¶¶ 18-54, 63-67.  Slower alleges that various actions taken by Confluent constitute breach of the Reseller Agreement, Partner Agreement, Partner Collaboration Agreement and Managed Services Agreement (collectively, the "Agreements"). *Id.*  Second, the counterclaims are based on Mr. Kane's purported sharing of the COE Framework, which Slower alleges constitutes both breach of the Agreements and trade secret

United States District Court
Northern District of California

misappropriation.  *Id.*, ¶¶ 55-62, 66, 74-93.

### B.    Procedural History and Slower's Suspension

After this Court granted Slower's motion to dismiss certain of Confluent's claims, Confluent declined to amend the Complaint and proceeded on its breach of contract, California unfair competition and federal (Lanham Act) unfair competition claims.  *See* Dkt. 30 (setting a February 11, 2025 deadline to amend the Complaint).  Slower filed its answer and counterclaims on April 2, 2025 and—after Confluent moved to dismiss those counterclaims—filed the operative, Amended Counterclaims on May 28, 2025.  Dkts. 41, 46, 47.

On July 2, 2025, Confluent filed the pending, renewed Motion to Dismiss.  Dkt. 51.  Apart from substantive challenges under Federal Rule of Civil Procedure 12(b)(6), Confluent argued that the Amended Answer and Counterclaims were improperly filed because Slower had been suspended by the California Franchise Tax Board ("FTB") since May 1, 2025.  *Id.* at 12-13, 16-17.  On July 16, 2025, Slower filed a response to the Motion, requesting that the Court stay the case as it pursued revival of its corporate status.  Dkt. 52.

The propriety of the stay and subsequent extensions thereto were disputed, briefed and argued by the Parties.  *See* Dkts. 52-55, 57-58, 60 (Minute Entry), 61.  Ultimately, the action was stayed through January 9, 2026, after which a briefing schedule agreed upon by the Parties for Confluent's Motion took effect.  Dkt. 61.  Slower filed its notice of revivor on January 14, 2026.  Dkt. 62.  The Motion was fully briefed on February 13, 2026.  Dkts. 63 (opposition), 64 (reply).

## II.    LEGAL STANDARD

### A.    Rule 12(b)(6) – Failure to State a Claim

Rule 12(b)(6) provides for a dismissal of an action for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  To survive a Rule 12(b)(6) motion to dismiss, the plaintiff (or counter-plaintiff) must allege "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  This "facial plausibility" standard requires the claimant to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  For a 12(b)(6) motion, all well-pleaded allegations of material fact are accepted as true and construed in the light

United States District Court
Northern District of California

United States District Court
Northern District of California

most favorable to the non-moving party. *Padilla v. Yoo*, 678 F.3d 748, 757 (9th Cir. 2012). However, a court is not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). In deciding a motion under 12(b)(6), a court may consider only "the complaint, materials incorporated into the complaint by reference, and matters of which the court may take judicial notice." *Metzler Inv. GmbH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1061. (9th Cir. 2008).

"A motion to dismiss a counterclaim brought pursuant to Federal Rule of Civil Procedure 12(b)(6) is evaluated under the same standard as a motion to dismiss a plaintiff's complaint." *AirWair Int'l Ltd. v. Schultz*, 84 F. Supp. 3d 943, 949 (N.D. Cal. 2015). However, as noted above, "[f]or the purpose of a motion to dismiss counterclaims, the operative 'complaint' in the preceding judicial standard is the counterclaims." *Allbirds, Inc.*, 2020 WL 6826487, at *3. "Therefore, the Court accepts as true the facts alleged in the counterclaims and gives no presumption of truth to the allegations in the amended complaint, unless the counterclaimant 'endorses or relies' on those allegations." *PharmacyChecker.com LLC v. LegitScript LLC*, No. 22-cv-252-SI, 2026 WL 207250, at *1 (D. Or. Jan. 27, 2026) (cleaned up) (quoting *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1550 (9th Cir. 1989)). Otherwise, "the court does not consider the complaint or answer." *Allbirds, Inc.*, 2020 WL 6826487, at *3.

### B.    Rule 12(f) – Motion to Strike

Rule 12(f) provides that a "court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Motions to strike are generally "disfavored" and "should not be granted unless the matter to be stricken clearly could have no possible bearing on the subject of the litigation." *Platte Anchor Bolt, Inc. v. IHI, Inc.*, 352 F. Supp. 2d 1048, 1057 (N.D. Cal. 2004). For "immaterial [or] impertinent" matters, as at issue here (*see* Dkt. 51 14-15), the purpose of Rule 12(f) motions to strike is for the parties and the Court "to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd, reversed on other grounds* 510 U.S. 517 (1994).

### III.    DISCUSSION

#### A.    Although Slower Was Suspended When it Filed its Amended Counterclaims, its Original Counterclaims Were Proper and the Court Declines to Strike the Amended Counterclaims on Procedural Grounds

As an initial matter, the Court begins by addressing Confluent's contention that all of Slower's Amended Counterclaims are improper because they were filed on May 28, 2025, during the time when Slower's corporate status was "suspended." Dkt. 51 at 16-17. As the Court explained in the context of the Parties' stay-related disputes, "[w]hile suspended by the FTB, a 'corporation may not prosecute or defend an action, nor appeal from an adverse judgment in an action while its corporate rights are suspended for failure to pay taxes.'" Dkt. 55 at 2-3 (quoting *Bourhis v. Lord*, 56 Cal. 4th 320, 324 (2013)). Thus, Confluent contends that "[a]lthough Slower may eventually revive itself," as Slower did on January 14, 2026, "and regain the right to file pleadings in the future, the Court should not reward Slower for its lack of diligence and candor by accepting Amended Counterclaims that Slower was not authorized to file, and that Slower knowingly failed to inform the Court it was not authorized to file." Dkt. 51 at 17. The Court is not persuaded for two reasons.

First, "[i]n a number of situations the revival of corporate powers by the payment of delinquent taxes has been held to validate otherwise invalid prior action." *Peacock Hill Assn. v. Peacock Lagoon Constr. Co.*, 8 Cal. 3d 369, 371 (1972) (collecting cases). Thus, Slower's revival may validate its earlier filing of the Amended Counterclaims, so long as the validation "serves the purpose of the code sections which is to put pressure on delinquent corporations to pay taxes." *See Design Data Corp. v. Unigate Enter., Inc.*, No. 12-cv-04131-WHO, 2013 WL 12387370, at *2 (N.D. Cal. Sept. 12, 2013) (citing *id.*). Here, for reasons the Court discussed in its Order Granting Defendant's Request for Stay and Continuance, the Court already determined that Slower's failure to inform the Court of its corporate status and decision to file its Amended Counterclaims did not reflect a lack of "candor" or a delay (*i.e.*, from May to June) "so lengthy as to merit a denial of the stay and the resulting consequences." Dkt. 55 at 2. In light of the same record and Slower having now paid its delinquent taxes, the Court determines that validating Slower's prior filing of the Amended Counterclaims would not contravene the purposes of the California Revenue and

6

United States District Court
Northern District of California

Taxation Code's suspension provisions (Cal. Rev. & Tax. Code §§ 23301-05).  Moreover, Confluent does not re-raise its suspension-based arguments in its reply, except insofar as they relate to leave-to-amend, (Dkt. 64 at 18), and gives the Court no reason to depart from its ruling in the "stay" context.

Second, this is not a case where Slower's counterclaims and answer in their entirety are improper:  Confluent does not contend that Slower's original, April 2, 2025 answer and counterclaims were filed while suspended.  Accordingly, disallowing Slower's Amended Counterclaims, *i.e.*, its amendment to its counterclaims, would merely roll back the counterclaims to their original form.  Logically, the Court ought to then re-instate Confluent's prior motion to dismiss, Dkt. 46, which it denied as moot in light of Slower's amendment.  Dkt. 48.  This would then require the Parties to brief substantively the same issues, and the Court to issue substantively the same decision—ultimately leading the Court and the Parties right back to where they started.  Federal Rule of Civil Procedure instructs courts that procedural rules "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding."  Fed. R. Civ. P. 1.  The interests of judicial efficiency thus also weigh against striking Slower's Amended Counterclaims.

Having so decided, the Court turns to the merits-based arguments raised by Confluent.

**B.      Confluent's Substantive Challenges to the Amended Counterclaims**

**1.      Slower's Counterclaim for Breach of Contract Fails as Pleaded**

Slower's Amended Counterclaims plead, in relevant part, that "Confluent breached the Agreements by … (i) misappropriating Slower's trade secrets in violation of Paragraph 12.1 of the Reseller Agreement, (ii) interfering with Slower's relationships with its customers to whom Slower sold [the] Confluent Software … and (iii) failing to deliver the services required of it under the terms of the Partner Collaboration Agreement."  Dkt. 47, Amended Counterclaims, ¶ 66.  "The standard elements of a claim for breach of contract are: (1) the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) damage to plaintiff therefrom." *Wall St. Network, Ltd. v. New York Times Co.*, 164 Cal. App. 4th 1171, 1178 (2008).  Here, Confluent challenges that Slower has not plausibly alleged breach by Confluent or damages

resulting therefrom.  *See* Dkt. 51 at 17-23.

Slower's allegations of breach, as shown above, are divided into three parts.  The Court addresses each category of allegations in turn.

### a.    Slower Fails to Plead Damages Arising from Confluent's Alleged Breach of the Confidentiality Provision

With regard to Slower's breach of contract counterclaim premised on Confluent's sharing of the COE framework, Confluent raises four sub-arguments.

Confluent's first and third arguments are that Slower's allegations as to the breach of confidentiality are unsupported by factual pleadings and impermissibly vague under the DTSA / CUTSA.  Dkt. 51 at 21-22.  As an initial matter, the Court considers only the first argument; Confluent points to no authority supporting that a *breach of contract* claim for breach of a confidentiality provision is governed by the standards it recites under the DTSA and CUTSA. *Contra id.* at 22.[1]  Rather, the question is whether Slower's allegations are supported by sufficient factual pleadings under *Twombly* and *Iqbal*.  The Court finds that they are.  The allegation of breach of confidentiality, although made on information and belief, is supported by concrete allegations of a conversation between Slower's employees and Mr. Kane, his assurances that the COE Framework would not be shared and the tip Slower allegedly received from "two former Confluent employees" that the COE Framework was shared.  Dkt. 47, Amended Counterclaims, ¶¶ 58-62.  Such facts are sufficient to support "information and belief" pleading where, as here, "the facts are peculiarly within the possession and control of the defendant." *Franey v. Advanced Micro Devices, Inc.*, No. 25-cv-06693-SVK, 2025 WL 3281420, at *4 (N.D. Cal. Nov. 25, 2025) (quoting, *inter alia, Soo Park v. Thompson*, 851 F.3d 910, 928 (9th Cir. 2017).

Confluent's second argument is grounded in the alleged contract itself:  Confluent argues that "the Confidentiality provision of the Reseller Agreement only applies to information that is disclosed 'pursuant to this Agreement[,]' … [yet] Slower fails to allege that it disclosed the [COE] Framework to Confluent under the Reseller Agreement."  Dkt. 51 at 21-22.  Confluent further

---

[1] Indeed, CUTSA would *preempt* breach of contract claims arising from a misappropriation of trade secrets "based on the same nucleus of facts." *See, e.g.*, Prior Order at 4 (citing, *inter alia*, *NetApp., Inc. v. Nimble Storage, Inc.*, 41 F. Supp. 3d 816, 839 (N.D. Cal. 2014)).

contends that the Reseller Agreement governs only Slower's resale of Confluent's software and services and thus cannot be applied to the COE Framework. *Id.* Slower responds that Confluent's argument is misplaced, because although the confidential information (the COE Framework) is Slower's, it was allegedly "shared … in the context of Slower's duties and responsibilities under the Reseller Agreement" and thus is governed by the Reseller Agreement. Dkt. 63 at 11.

This is an issue of contract interpretation, namely, whether § 12.1 of the Reseller Agreement—which the Parties agree is the provision at issue—may be applied to the COE Framework. Where "the main issue raised" on a motion to dismiss is "one of contract interpretation," a "court may resolve contractual claims on a motion to dismiss if the terms of the contract are unambiguous." *Alta Devices, Inc. v. LG Elecs., Inc.*, 343 F. Supp. 3d 868, 878-79 (N.D. Cal. 2018) (citing *Bedrosian v. Tenet Healthcare Corp.*, 208 F.3d 220 (9th Cir. 2000)). However, "where the language leaves doubt as to the parties' intent, the motion to dismiss must be denied." *Id.* (cleaned up) (citing *Consul Ltd. v. Solide Enteres., Inc.*, 802 F.2d 1143, 1149 (9th Cir. 1986)). The Reseller Agreement is attached to the Complaint, (*see* Dkt. 1 at 17-30), and the Court may consider the Reseller Agreement as clearly "endors[ed]" and "relie[d] on" by Slower in its Amended Counterclaims, (*see PharmacyChecker.com*, 2026 WL 207250, at *1).

Examining the Reseller Agreement, the Court does not agree with Confluent's interpretation. Confluent's argument rests upon interpreting the phrase "information and know how disclosed … pursuant to this Agreement" as being limited solely to *Confluent's* information. Dkt. 51 at 22 (citing Reseller Agreement, § 12.1). Such a reading ignores the clear and unambiguous context of the confidentiality provision:

> **Each party** shall retain in confidence the non-public information and know-how disclosed or **made available by the other party** pursuant to this Agreement which is either designated in writing as proprietary and/or confidential, if disclosed in writing, or if disclosed orally, is designated in writing (which may be via email) as confidential within thirty (30) days of the oral disclosure or should reasonably be understood to be confidential by the recipient (the 'Confidential Information').

Reseller Agreement, § 12.1 (emphasis added). This provision clearly contemplates that Confluent will "retain in confidence" confidential information "made available by [Slower,]" just as Slower

9

United States District Court
Northern District of California

must retain in confidence the information made available by Confluent, subject to proper designation. *Id.* Confluent's reading of "pursuant to this Agreement" as meaning *only* Confluent's own services, rather than, *e.g.*, either party's information disclosed in the course of performing under the agreement, would render the terms "Each party" and "the other party" entirely superfluous. At a minimum, it is not unambiguously clear that the COE Framework is excluded, so long as it was disclosed (as Slower has alleged) in the context of its performance under the Reseller Agreement. Accordingly, the Court will not dismiss the claim on this ground.

Finally, Confluent argues that Slower has not alleged damages. "Claims for breach of contract or for breach of the implied covenant of good faith and fair dealing require allegation of actual damages." *Walsh v. Dollar Tree Stores, Inc.*, No. 25-cv-01601-SVK, 2025 WL 2939229, at *19 (N.D. Cal. Oct. 16, 2025) (citing *Ruiz v. Gap, Inc.*, 380 F. App'x 689, 692 (9th Cir. 2010); and *Aguilera v. Pirelli Armstrong Tire Corp.*, 223 F.3d 1010, 1015 (9th Cir.2000)) (explaining that, even in light of "California authority arguably to the contrary, this Court is bound to follow *Aguilera* as Ninth Circuit precedent.")). Here, Slower's Amended Counterclaim fails. Although Slower has alleged that the COE Framework has a "monetary value … believed to be in excess of $400,000), Slower's bare allegation of damages "in an amount to be proven at trial but which exceeds the jurisdictional minimum of this Court" is insufficient. Dkt. 47, ¶¶ 55, 67. Slower does not explain how the monetary value of the COE Framework translates to damages *arising from the alleged breach of contract*.

Accordingly, the Court **GRANTS** Confluent's Motion to Dismiss the breach of contract counterclaim with regard to the confidentiality provision. For the reasons explained in Section III.C., the Court **grants Slower leave to amend** with regard to the limited issue of **damages**.

#### b. Slower's Other Breach of Contract Counterclaims Fail to Sufficiently Allege a Breach by Confluent

Slower's other two grounds for breach of contract—that Confluent "(ii) interfere[d] with Slower's relationships with its customers to whom Slower sold [the] Confluent Software … and (iii) fail[ed] to deliver the services required of it under the terms of the Partner Collaboration Agreement," (Dkt. 47, Amended Counterclaims, ¶ 66)—fail for a more fundamental reason:

10

Slower has not tied its allegations of breach to any provisions of the Agreements.

In its Amended Counterclaims, Slower sets forth a factual narrative of conduct it alleges Confluent engaged in with regards to Customers A-F.  *Id.*, ¶¶ 18-54.  Slower alleges that:

- "Confluent had bypassed Slower and Customer A's established business relationship to communicate with and complete unapproved work with Customer A directly … utilizing one of Slower's competitors," (*id.*, ¶ 26);  and

- with regard to all of Customers B-F, Confluent representatives "communicated with [the] Customer[s] directly and told [them] to stop working with Slower," and also stated "one or more falsehoods about Slower, including that Slower did not have the depth and breadth to service [their] requirements, Slower is working poorly on Confluent engagements, Slower is not a real company," (*id.*, ¶¶ 30-31, 36-37, 41-42, 46-47, 51-52).

What Slower does **not** allege, however, are any specific contractual provisions—or even, for category (ii), the Agreements—that these actions allegedly breached.  *See id.*, ¶¶ 18-54.  Absent such identifications, Slower's Amended Counterclaims are problematic "shotgun pleadings," specifically the third "type[] or category[y] of shotgun pleadings," wherein a complaint "is replete with conclusory … and immaterial facts not obviously connected to any particular cause of action."  *See Gibson v. City of Portland*, 165 F.4th 1265, 1288 (9th Cir. 2026) (discussing the "four main types of shotgun pleadings").  Even as to category (iii), where Slower identifies the Partner Collaboration Agreement generally, it does not point to any section of the Partner Collaboration Agreement that was allegedly breached.  Dkt. 47, Amended Counterclaims, ¶ 66.  "[D]istrict courts do not have to accept such shotgun pleadings.  It is not the job of the district courts to make sense of the pleading, to supply facts to support the claim, or to imagine the claims that might fit the facts."  *Gibson*, 165 F. 4th at 1289.

Such pleadings "undermine[] a fundamental purpose of Rule 8, which is to provide defendants with adequate notice of the plaintiff's claims, including the facts and the legal basis for

relief." *Id.* at 1290.[2]  That is the case here, as neither Confluent nor the Court can tell which of the Agreements and provisions thereof are at issue.  Accordingly, with regard to its second and third categories of alleged breach of contract, the Court **GRANTS** the Motion to Dismiss because Slower fails to tie any of these factual allegations to any contractual provisions of the Agreements. Moreover, for the reasons explained in Section III.C., the Court **denies leave to amend** with regard to these categories.

United States District Court
Northern District of California

> **2.   Slower's Counterclaim for Breach of the Implied Covenant of Good Faith and Fair Dealing Fails to Allege the Contract Provisions at Issue**

With regard to categories (ii) and (iii) of its counterclaim for breach of contract, *i.e.*, the categories based on the allegations in paragraphs 18-54 of the Amended Counterclaims, (*see, supra*, § III.B.1.b.), Slower also brings a counterclaim for breach of the implied covenant of good faith and fair dealing.  Dkt. 47, Amended Counterclaim, ¶¶ 68-73.  Slower's key allegation is:

> Confluent materially and substantially breached its implied covenant of good faith and fair dealing by …
>
> [i] causing Slower's pre-existing customers (*i.e.*, Customers A-F) to not renew their agreements with Slower for use of Confluent Software and Slower's professional services,
>
> [ii] using a competitor of Slower to provide such professional services to one or more of Slower's pre-existing customers thereby bypassing Slower, and
>
> [iii] failing to cooperate with Slower as a reseller of Confluent products by making false and/or denigrating and disparaging statements about the quality and competency of Slower's services to third-parties, including, but not limited to, Slower's customers such that these customers and third-parties ceased doing further business with Slower.

*Id.*, ¶ 72 (altered for readability).

"Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement."  *Carma Devs. (Cal.), Inc. v. Marathon Dev. California, Inc.*, 2

---

[2] Confluent brings its challenges under Rule 12(b)(6).  Nonetheless, Confluent's contentions as to Slower's fundamental failure to tie its sprawling factual narrative to concrete provisions of any contract raise a Rule 8 problem that the Court may consider independently.  *Gibson*, 165 F.4th at 1289 ("Whether the parties have raised the issue or not, the district court has 'inherent authority to control its docket and ensure the prompt resolution of lawsuits, which in some circumstances includes the power to dismiss a complaint for failure to comply with Rule 8(a)(2)….'").

Cal. 4th 342, 371 (1992).  The covenant "is based on general contract law and the long-standing rule that neither party will do anything which will injure the right of the other to receive the benefits of the agreement."  *Waller v. Truck Ins. Exch., Inc.*, 11 Cal. 4th 1, 36 (1995), *as modified on denial of reh'g* (Oct. 26, 1995) (internal quotation marks and citations omitted).  Thus, in California, "the factual elements necessary to establish a breach of the covenant of good faith and fair dealing are: (1) the parties entered into a contract; (2) the plaintiff fulfilled his obligations under the contract; (3) any conditions precedent to the defendant's performance occurred; (4) the defendant unfairly interfered with the plaintiff's rights to receive the benefits of the contract; and (5) the plaintiff was harmed by the defendant's conduct."  *Rosenfeld v. JPMorgan Chase Bank, N.A.*, 732 F. Supp. 2d 952, 968 (N.D. Cal. 2010).

Confluent's challenges this counterclaim because, in relevant part, Slower again "fails to identify any specific contract provisions implicated by Confluent's conduct vis-à-vis [the] Customer[s]."  Dkt. 51 at 24-26.

Slower's Amended Counterclaim for breach of the implied covenant points to the Agreements it contends are implicated *generally* (the Reseller Agreement, the Partner Agreement, the Partner Collaboration Agreement and the Managed Services Agreement (Dkt. 47, Amended Counterclaims, ¶¶ 69, 72) but it again fails to allege which specific provisions are at issue.  These allegations are similar to Slower's untethered pleadings with regard to its breach of contract claim. *See, supra*, § III.B.1.b.  However, unlike in the breach-of-contract context, where the failure to assert specific provisions is clearly fatal, Slower argues that it need only allege the *contract*, not specific provisions, for its implied-covenant claim.  Dkt. 63 at 15-16.  Confluent disagrees.  Dkt. 64 at 9, 11.

The Court agrees with Confluent.  To be sure, as Slower argues, "breach of a specific provision of the contract is not a necessary prerequisite."  *Carma Devs.*, 2 Cal. 4th at 373.  "Were it otherwise, the covenant would have no practical meaning, for any breach thereof would necessarily involve breach of some other term of the contract."  *Id.*  However, Confluent's argument is more nuanced:  While Slower need not prove Confluent *breached* a contract term, "in order to state a claim for breach of an implied covenant of good faith and fair dealing, the specific

13

contractual obligation from which the implied covenant of good faith and fair dealing arose must be alleged." *Griffin v. Green Tree Servicing, LLC*, No. 14-cv-09408-MMM, 2015 WL 10059081, at *10 (C.D. Cal. Oct. 1, 2015) (collecting cases from this District as well as the Central and Eastern Districts of California).  Here, Slower has not alleged the specific provisions giving rise to any specific benefits of the contract with which that Confluent has interfered.

The issue is much the same as Slower's breach of contract counterclaim:  by merely pointing to all of the Agreements (or three Agreements) in general, without specifying any contractual provisions, Slower engages in shotgun pleading that fails "to provide defendants with adequate notice of the plaintiff's claims, including the facts and the legal basis for relief."  *Gibson*, 165 F.4th at 1290;  *see also, supra*, § III.B.1.b.  Accordingly, the Court **GRANTS** Confluent's Motion to Dismiss Slower's counterclaim for breach of the implied covenant of good faith and fair dealing.  Moreover, for the reasons explained in Section III.C., the Court **denies leave to amend** with regard to these categories.

### 3.    Slower's Trade Secret Misappropriation Counterclaims Fail to Sufficiently Plead Damages

Slower's third and fourth counterclaims are for misappropriation under the DTSA and CUTSA, respectively.  Dkt. 47, Amended Counterclaims, ¶¶ 74-93.  Both laws have nearly[3] the same pleading requirements, as "both laws require a plaintiff to [allege] [(1)] that it possessed a trade secret, [(2)] that the defendant misappropriated the trade secret, and [(3)] that the defendant's conduct damaged the plaintiff."  *Tesla, Inc. v. Proception, Inc.*, No. 25-cv-04963-SVK, 2025 WL 3187569, at *5 (N.D. Cal. Nov. 14, 2025) (cleaned up) (citing *WeRide Corp. v. Kun Huang*, 379 F. Supp. 3d 834, 845 (N.D. Cal. 2019)).

Slower's trade secret claims are based on alleged misappropriation of its COE Framework, as the Court described previously.  *See, supra*, §§ I.A., III.B.1.  Confluent challenges Slower's

---

[3] The exception, not relevant here, is that, as the Ninth Circuit's held in *Quintara Biosciences, Inc. v. Ruifeng Biztech, Inc.*, the "DTSA requires a plaintiff to identify a trade secret with 'sufficient particularity' as a matter of fact, unlike CUTSA's 'reasonable particularity' rule" and "unlike CUTSA, [the] DTSA does not set out requirements for the specific timing or scope for identifying trade secrets."  149 F.4th 1081, 1088-89 (9th Cir. 2025).  "The DTSA thus does not require a disclosure compliant with [Cal. Code Civ. Proc.] Section 2019.210, while CUTSA may have such a requirement. *Id.* at 1088 n. 1."  *Tesla*, 2025 WL 3187569, at *5 (citing *id.*).

United States District Court
Northern District of California

trade secret claims as insufficiently pleaded as to all three requirements: (1) a failure to identify trade secrets with sufficient particularity, (2) a failure to sufficiently allege misappropriation and (3) a failure to sufficiently plead damages. Dkt. 51 at 26-30. The Court addresses each in turn

**a.    Slower's Allegations Identify its Alleged Trade Secret with Sufficient Particularity, and Slower Sufficiently Pleads Independent Economic Value**

Under the both the DTSA and CUTSA, a trade secret is (1) "information" that is "derives independent economic value … from not being generally known to the public or to other persons …" and (3) that is subject to reasonable efforts to maintain its secrecy. *See* 18 U.S.C. § 1839(3), (5); Cal. Civ. Code § 3426.1(d). As this Court's Prior Order held in dismissing Confluent's own trade secret claims,

> to state a claim for misappropriation of trade secrets, the plaintiff must 'describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special persons who are skilled in the trade, and to permit the defendant to ascertain at least the boundaries within which the secret lies.

Dkt. 30 at 5 (quoting *Calsoft Labs, Inc. v. Panchumarthi*, No. 19-4398, 2020 WL 512123, at *6 (N.D. Cal. Jan. 31, 2020).[4] Confluent argues that Slower has not sufficiently described its trade secret because Slower's Amended Counterclaims (a) describe it vaguely as containing "specific processes, implementation strategies, and proposed initiatives for how to democratize the use and consumption of Confluent Platform and Confluent Cloud" and (b) "fail to explain how the Framework "derives independent economic value from not being generally known to the public." Dkt. 51 at 27-28 (quoting Dkt. 47, Amended Counterclaims, ¶¶ 55-56). Confluent argues these allegations "are particularly ironic given that it persuaded the Court to dismiss Confluent's CUTSA claim for the ***exact*** same failure of specificity." *Id.* at 28 (citing Dkt. 30 at 5-6).

---

[4] Confluent's Motion relies on the "sufficient particularity" standard to attack both Slower's DTSA and CUTSA counterclaims. *See* Dkt. 51 at 26-28. As the Court explained in n. 5, above, CUTSA's "reasonable particularity" standard may be more procedurally burdensome to the extent it requires compliance with Cal. Code Civ. Proc. Section 2019.210. *See, supra*, n.5. Confluent's Motion which was filed before *Quintara* was decided in August of 2025; however its reply was filed well after. *See* Dkt. 64. Since Confluent did not raise the challenge either in its Motion or on reply, the Court need not analyze any additional requirements under CUTSA.

Slower disagrees, arguing that its allegations are meaningfully more detailed than Confluent's in various ways.  The Court agrees with Slower, for the following reasons.

First, as to Slower's identification of the COE Framework, all of the arguments boil down to this:  although Slower's description relies on setting forth "categories of information" contained in the COE framework, Slower ultimately relies on a *specific document*, a "copy" of which was allegedly shared with Mr. Kane.  Dkt. 47, Amended Counterclaim, ¶ 60;  *see* Dkt. 63 at 18.  This is not in tension with the Court's Prior Order:  Confluent's complaint alleged that its "customer lists," as a category, were "trade secrets" without identifying any specific documents that were at issue, nor identifying the contents of such lists (*e.g.*, "names, addresses, telephone numbers, and details of products/services").  Dkt. 30 at 5-6; Dkt. 1, ¶ 37.[5]  Tethering an alleged trade secret to specific document(s), as Slower does, makes all the difference.  *See, e.g.*, *Tesla*, 2025 WL 3187569, at *6 (while "a plaintiff 'may not simply rely upon 'catchall' phrases or identify categories of trade secrets,' … 'categories of information become sufficiently particularized for purposes of stating a trade secret claim where the complaint alleges that these categories of information are contained within specific documents.'") (cleaned up) (quoting *Quintara*, 149 F. 4th at 1087;  *Beluca Ventures LLC v. Einride Aktiebolag*, 660 F. Supp. 3d 898, 908 (N.D. Cal. 2023));  *Arthur J. Gallagher & Co. v. Tarantino*, 498 F.Supp.3d 1155, 1172 (N.D. Cal. 2020) (identifying "nine specific documents that it claimed contained its trade secrets" was sufficient).

Second, Slower has sufficiently alleged how its COE Framework derives independent economic value from not being known to the public.  As the Court previously explained, "merely reciting this element in a pleading is insufficient," but "the standard to show that trade secrets derive independent economic value [from secrecy] is not a high standard."  Dkt. 30 at 6 (quoting *Cisco Sys., Inc. v. Chung*, 462 F. Supp. 3d 1024, 1052 (N.D. Cal. 2020)).  For example, [i]ndependent economic value can be shown by 'circumstantial evidence of the resources invested

---

[5] The Court is not persuaded by Confluent's reply, which argues that its customer list allegations were allegations about specific documents yet deemed insufficient by the Court.  *See* Dkt. 64 at 12-13.  No *specific* document was pointed to by Confluent;  rather, it pointed to a category of information (customer lists) that were, at best, a *category* of documents – with no information about specific documents or information implicated therein.  *See* Dkt. 1, ¶¶ 37-38, 52-54.  That is not the case here, as Slower does not rest on allegations of unspecified frameworks generally.

United States District Court
Northern District of California

in producing the information, the precautions taken to protect its secrecy, and the willingness of others to pay for its access.'" *Calendar Rsch. LLC v. StubHub, Inc.*, No. 17-cv-04062-SVW-SS, 2017 WL 10378336, at *3 (C.D. Cal. Aug. 16, 2017) (quoting *Religions Tech. Ctr. v. Netcom On-Line Commc'n Servs., Inc.*, 923 F. Supp. 1231, 1253 (N.D. Cal. 1995)). Here, Slower has alleged an approximate dollar amount of money it believes the COE Framework to be worth ($400,000), it explains that "customers seek out Slower's specific methods, techniques, and processes, which Slower has created and developed and which are unique to Slower, to be able to use and consumer Confluent Platform…," and it explains that the COE Framework "is housed in a password protected drive that requires multi-factor authentication for access. The only individuals with access to the Secret Framework are Slower's Chief Executive Officer, Rikin Shah ("Shah"); Slower's Midwest General Manager, Peter Redlingshafer ("Redlingshafer"); and Slower's General Manager West, Tom White." Dkt. 47, Amended Counterclaims, ¶¶ 55-57.

To be sure, these allegations could be more specific – Slower does not allege, for example, the specific amount of money or time *invested* in developing the COE Framework. However, it has alleged sufficient circumstantial evidence, (*see Calendar Rsch.*, 2017 WL 10378336, at *3), from which the Court may draw a reasonable inference as to the COE Framework's value. The Court is required to draw reasonable inferences in Slower's favor upon a motion to dismiss.[6]

**b.      Slower Plausibly Alleges Misappropriation via Confluent's Alleged Improper Disclosure**

Under the DTSA, "misappropriation" means "(A) acquisition of a trade secret ... by improper means; or (B) disclosure or use of [the] trade secret...." 18 U.S.C. § 1839(5). It is defined similarly under CUTSA. *See* Cal. Civ. Code § 3426.1(b). Confluent contends that Slower

---

[6] This is, again, meaningfully different from Confluent's complaint. The sum total of Confluent's allegation regarding independent economic value was: "[The customer lists] are the product of extensive investment of human and economic capital over a period of many years. They derive value from not being generally known to the public, particularly from not being known to Confluent's competitors, who could seek to use them to divert customers away from Confluent." Dkt. 1, ¶ 52. Such allegations are too "conclusory," as the Court's Prior Order explained, and did not explain *how* the value was derived from secrecy. Dkt. 30 at 6. Confluent's complaint also included no specific claim of value (beyond "millions of dollars") and no specific explanations of secrecy. *See* Dkt. 1, ¶ 38. Slower's allegations, as explained and detailed above, are more specific and particularized.

United States District Court
Northern District of California

alleges misappropriation in "sweeping generalities" and thus fails to plausibly allege misappropriation. Dkt. 51 at 29-30. Slower contends that it need not plead specifics as to Confluent's "use" prior to discovery, and that it has pleaded specifics as to improper "acquisition" and "disclosure" based on Mr. Kane's alleged "false[] promis[e] to maintain the secrecy of" the COE Framework. Dkt. 63 at 20-21. Confluent replies that Slower is mistaken on the standard as to "use" or "disclosure," but rests on its motion as to "acquisition." Dkt. 64 at 14-15. Here, the Court agrees with Confluent.

### i.      Allegations of Improper Use

With regard to any alleged use of the COE Framework, Slower does not seriously contend that it has alleged specifics;  rather, Slower claims it is not required to do so, citing *Vinyl Interactive, LLC v. Guarino*, No. C 09-cv-00987-CW, 2009 WL 1228695, at *8 (N.D. Cal. May 1, 2009) and *Autodesk, Inc. v. ZWCAD Software Co. Ltd.*, No. 14-cv-01409-EJD, 2015 WL 2265479, at *6 (N.D. Cal. May 13, 2015). Dkt. 63 at 20-21. Slower's reasoning is flawed.

First, the court in *Vinyl* explained that, in the absence of discovery, "it would be unreasonable to require [Plaintiff] to demonstrate in connection with the present motion the **precise** ways in which Defendants may have used [Plaintiff]'s trade secrets, given that Defendants are the only ones who possess such information." *Vinyl Interactive*, 2009 WL 1228695, at *8 (emphasis added). However, the court so held only because the plaintiff had "demonstrate[d] a fair likelihood" of improper disclosure, from third-party "Eddy" to the defendant "Guarino." *Id.* In other words, *Vinyl*—a decision on a motion for preliminary injunction—found a likelihood of success based on disclosure, not on use. *Id.* It is well-settled that a party "does not need to show a likelihood of success on *every* claim in order to obtain a preliminary injunction," (*Tesla*, No. 25-cv-04963-SVK, 2025 WL 3187569, at *5 (emphasis in original). Thus, the Court does not view *Vinyl* as having granted a preliminary injunction based on a showing of use but based on a showing of disclosure. Accordingly, *Vinyl* is simply inapposite to the question of use.

As for *Autodesk*, the court in that case permitted misappropriation claims to proceed notwithstanding a failure to plead "exactly how Defendants improperly obtained or used the alleged trade secret." *Autodesk, Inc. v. ZWCAD Software Co.*, No. 14-cv-01409-EJD, 2015 WL

2265479, at *6.  However, the plaintiff's complaint in *Autodesk* included detailed allegations, including screenshots, of "crucial and unmistakable … similarities" between the plaintiff's and defendants' products.  *See id.* at *2.  These allegations raised a plausible inference that the source code, *i.e.*, the trade secret at issue, had been stolen.  *See id.* at *6.  Slower's use allegations are unlike those in *Autodesk*, because Slower includes no details from which the Court could draw inferences as to how Confluent made use of the COE Framework.  Dkt. 47, Amended Counterclaims, ¶¶ 58-62.

### ii.    Allegations of Improper Acquisition

What remains are Slower's allegations of improper acquisition.  Here, Slower pleads sufficient factual details surrounding the acquisition.  In or about November 2020, Mr. Kane requested during a phone meeting with Mr. Shah and Mr. Redlingshafer that the COE Framework be shared with him.  *Id.*, ¶ 58.  He allegedly assured Mr. Shah and Mr. Redlingshafer that it would not be shared internally at Confluent or with Mr. Kane's clients.  *Id.*, ¶ 59.  "Following the call, Slower shared a copy of the Secret Framework with Kane."  *Id.*, ¶ 60.  What is missing, however, is any allegation that Mr. Kane's acquisition was *improper*.  While Slower's opposition argues that the acquisition was improper because Mr. Kane "falsely promis[ed] to maintain the secrecy of" the COE Framework, there is no such allegation in the Amended Counterclaims.  It is "axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss."  *Cork v. Cc-Palo Alto, Inc.*, 534 F. Supp. 3d 1156, 1183 n.8 (N.D. Cal. 2021).

### iii.    Allegations of Improper Disclosure

Having alleged the details as to how Mr. Kane acquired the COE Framework, *i.e.*, that it was properly acquired but under an alleged assurance that it would not be shared internally at Confluent or externally, (Dkt. 47, Amended Counterclaims, ¶ 59), what remains is whether Slower has plausibly alleged improper disclosure.  Under *Twombly* and *Iqbal*, with regard to Slower's breach of contract counterclaim, the Court found the allegations of disclosure to be sufficient at the pleading stage.  *See, supra*, § III.B.1.a.

However, the Court now addresses the issue it set aside earlier:  Confluent cites DTSA cases dismissing claims that failed to "sufficiently delineate [the] timelines of the alleged acts of

misappropriation and use of purported trade secrets." Dkt. 51 at 22 (quoting *Vendavo, Inc. v. Price f(x) AG*, No. 17-cv-6930, 2018 WL 1456697, at *4 (N.D. Cal. Mar. 23, 2018)) (also quoting *Cave Consulting Grp., Inc. v. Truven Health Analytics, Inc.*, No. 15-2177, 2017 WL 1436044, at *5 (N.D. Cal. Apr. 24, 2017) ("dismissing DTSA claim for asserting allegations '[o]n information and belief' that the defendant used the plaintiff's intellectual property to compete 'without facts about when [such] use occurred.'")). The Court does not find either case persuasive.

In *Vendavo*, the court made clear that the core issue was that plaintiff did not describe the trade secret with sufficient particularity, (*Vendavo*, 2018 WL 1456697, at *4), something Slower has done here, (*see, supra*, § III.B.3.a.). The court also explained that the lack of "timeline" allegations "exacerbated" the issues, but only "[g]iven the territorial and temporal limits of the DTSA" making such facts "foundational to the existence of a viable claim" in the case (involving a foreign parent corporation and a potential act of misappropriation not covered by the DTSA[7]). *Id.* The issue in *Cave Consulting Group* was the same: "The Court finds that without facts about when post-enactment use occurred and whether the information disclosed was new or somehow different from the prior misappropriation, plaintiff has failed to state a claim under the DTSA." *Cave Consulting Grp., Inc. v. Truven Health Analytics Inc.*, 2017 WL 1436044, at *5. Here, Slower has alleged a timeframe—after November 2020—and all events at issue in the Amended Counterclaims are alleged to have taken place within the United States. Dkt. 47, Amended Counterclaims, ¶¶ 4, 58. The "territorial and temporal limits" of the DTSA are thus not implicated, contrary to the cases Confluent cites.

Accordingly, the Court finds Slower's "improper disclosure" allegations sufficient.

### c.    Slower Fails to Plausibly Allege Damages

Finally, Confluent raises the same damages argument, and Slower raises the same response, as with regard to Slower's breach of contract counterclaim. *See* Dkt. 51 a 30; Dkt. 63 at 21; Dkt. 64 at 16. For the same reasons as explained in Section III.B.1.a., above, and because the

---

[7] The DTSA "applies only to any misappropriation of a trade secret ... for which any act occurs on or after May 11, 2016, the date of the enactment of the Act." *Vendavo*, 2018 WL 1456697, at *3 (cleaned up).

20

Court agrees that there is a difference between alleging the "monetary value" of the COE Framework and alleging damages resulting from its alleged misappropriation, the Court agrees with Confluent.  *Cf.* Cal. Civ. Code § 3426.3 (permitting damages under CUTSA for "actual loss," "unjust enrichment," "a reasonable royalty" or, for willful and malicious misappropriation, "exemplary damages.").  Slower's damages allegations are thus insufficient.

\* \* \*

Accordingly, as with Slower's breach of contract claim with regard to the confidentiality provision of the Reseller Agreement, the Court finds that Slower has identified its alleged trade secret and pleaded misappropriation under the DTSA and CUTSA but has failed to plead damages.  Thus, the Court **GRANTS** Confluent's Motion to Dismiss these counterclaims.

For the reasons explained in Section III.C., the Court **grants Slower leave to amend** with regard to the limited issue of **damages**.

#### 4.    Confluent Fails to Meet its Burden to Dismiss the Entirety of Slower's Unfair Competition Law ("UCL") Claim

Finally, Cal. Bus. & Prof. Code § 17200, California's unfair competition law ("UCL"), prohibits competition that is "unfair," "unlawful" or "fraudulent."  *Pfizer Inc. v. Superior Court*, 182 Cal.App.4th 622, 629 (2010).  The Parties agree that claims under the "unlawful" prong rise or falls with Slower's other claims.  Dkt. 51 at 30; Dkt. 63 at 21.  Confluent seeks dismissal of the UCL claim on all three grounds, while Slower opposes only with regard to the "unfair" or "fraudulent" prongs.  In its opposition, Slower makes clear that the UCL counterclaim relies (for the unfairness prong) on allegations relating to Confluent's conduct with Customers A-F.  Dkt. 63 at 21 (citing Dkt. 47, Amended Counterclaims, ¶¶ 30-31, 36-37, 41-42, 46-47, 51-52, 72).

Confluent's only reply is that these are "the very same impermissibly vague, cut-and paste allegations that Slower relies on to support its contract and implied covenant claims as to Customers B-F," and that Slower does not cite to any of the paragraphs implicating Confluent's conduct with Customer A.  Dkt. 64 at 16-17.  However, Confluent does not provide any authority for this argument.  *Id.*  The Court did not dismiss Slower's allegations as impermissibly vague, but for failing to identify the specific contract sections which were breached and/or which gave rise to

21

United States District Court
Northern District of California

the implied covenant—one of the arguments raised by Confluent.  *See, supra*, § III.B.1.b.

Accordingly, because Confluent fails to support its assertion that the allegations in paragraphs 30-31, 36-37, 41-42, 46-47 and 51-52 are impermissibly vague, and the Court does not find them facially vague or implausible, Confluent has not met its burden as the movant.

Accordingly, Confluent's Motion to Dismiss the UCL counterclaim is **GRANTED IN PART** and **DENIED IN PART**.  Slower's UCL counterclaim is **dismissed without leave to amend** as to allegations with regard to Customer A, for which Slower does not allege unfair (but only unlawful) conduct;  **dismissed with leave to amend** as to allegations of unlawful conduct relating to breach of the confidentiality provision and/or trade secret misappropriation; and otherwise remains with regard to allegations of "false and misleading" statements made to Customers B-F.

* * *

In sum, Confluent's Motion is **GRANTED IN PART** and **DENIED IN PART**.

### C.      The Court Grants Limited Leave to Amend

The Court now addresses whether and to what extent Slower may further amend its counterclaims.  Where a court finds that dismissal is warranted, it should ordinarily "grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc).  However, the Court may consider the other *Foman* factors on a motion to dismiss:  "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment" may all support denial of leave to amend.  *Leadsinger, Inc. v. BMG Music Pub.*, 512 F.3d 522, 532 (9th Cir. 2008).

Here, Slower has already had an opportunity to amend its counterclaims, which it made use of as-of-right within the 21 days after Confluent filed its original motion to dismiss.  *See, supra*, § I.B. (describing procedural history).  As Confluent points out, its original motion made "the same exact arguments for dismissal" as the Motion at bar.  Dkt. 64 at 17.  The Court agrees that, after "Confluent gave Slower a point-by-point roadmap of how to amend its Counterclaims,"

22

Slower made very few substantive improvements. *Cf. id.* at 17-18 (citing Dkt. 64-2 (redline of the Amended Counterclaims against the original counterclaims). This suggests that further amendment would be futile and weighs against further leave to amend.

Moreover, the Court must consider the particular posture of this case: due to Slower's months-long suspension by the FTB, the case has been stayed for nearly six months. While not an intentional delay by Slower, and thus not supportive of bad faith, the delay nonetheless impairs Confluent's right to have a timely adjudication of its case, to which Slower seeks to add counterclaims. This prejudice to Confluent, which it raised in its oppositions to the Slower's requested stay, while insufficient to defeat a stay, is sufficient deny Slower the opportunity to amend yet again.

Taken together, the Court is reluctant to allow Slower the tenuous opportunity to attempt, again, to amend its implied-covenant counterclaims or the breach of contract claims relating to Customers A-F. The Court finds that such amendments will likely be futile.

The Court will permit, however, **limited leave to amend** for Slower to allege the amount of its damages, if it can do so in good faith, arising from either the alleged breach of the confidentiality provision or the alleged misappropriation of its COE Framework. In so doing, the Court notes that Slower's CUTSA claim would preempt its breach of contract claim, because both claims arise from the same sharing of the COE Frameworks. *See, e.g.*, Prior Order at 4 (citing, *inter alia*, *NetApp., Inc. v. Nimble Storage, Inc.*, 41 F. Supp. 3d 816, 839 (N.D. Cal. 2014)). Accordingly, in amending its counterclaims, Slower may elect to proceed either under a breach of contract theory or a CUTSA-based trade-secret misappropriation theory, but not both.

### D.     Request to Strike Certain Allegations

Finally, the Court addresses Confluent's request to strike certain allegations in the Amended Counterclaims. Confluent's motion to strike is directed specifically toward paragraphs 18-54, *i.e.*, the "Customers A-F" allegations. Dkt. 51 at 19-20, 21, 31. The "purpose [of Confluent's request] is to streamline the contract and implied covenant claims in the event the Court allows those claims to go forward under another factual predicate; *i.e.*, breach of confidentiality." Dkt. 51 at 19 n. 6. Slower does not oppose the motion to strike *except* insofar as

United States District Court
Northern District of California

the allegations at issue "are relevant to Slower's breach of the implied covenant of good faith and fair dealing claim." Dkt. 63 at 12 n.2.

Confluent moves to strike paragraphs 18-54 as "immaterial" and "impertinent" to the pleadings. Dkt. 51 at 14-15. "'Immaterial' matter is that which has no essential or important relationship to the claim for relief or the defenses being pleaded." *Fantasy, Inc. v. Fogerty*, 984 F.2d at 1527 (9th Cir. 1993). "'Impertinent' matter consists of statements that do not pertain, and are not necessary, to the issues in question." *Id.* Here, the Court's decision dismisses, without leave to amend, Slower's breach of contract and breach of implied covenant counterclaims to the extent they are predicated on the "Customers A-F" interactions. *See, supra*, §§ III.B.1.b., B.2. However, Slower may proceed on its breach of contract claim under the breach of confidentiality theory if it can allege damages. *See, supra*, §§ III.B.1.a., III.C. Finally, Confluent did not carry its burden in showing that Slower's UCL counterclaim for unfair or fraudulent statements to Customers B-F should be dismissed. *See, supra*, § III.B.4.

Thus, the Court finds Confluent's request to be justified in part. Because all claims relating to the conduct alleged with regard to Customer A have been dismissed without leave to amend, the Court **GRANTS IN PART** Confluent's request and **STRIKES** paragraphs 18-27.

The allegations relating to statements made to Customers B-F, however, remain material and pertinent to Slower's UCL claim. Accordingly, the Court **DENIES IN PART** Confluent's request, as it relates to paragraphs 28-54.

## IV.   CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Confluent's Motion, as follows:

- Slower's Amended Counterclaim for breach of contract is **dismissed with leave to amend only as to damages** with regard to breach of § 12.1 of the Reseller Agreement;

- Slower's Amended Counterclaim for breach of contract is otherwise **dismissed without leave to amend**;

////

- Slower's Amended Counterclaim for breach of the implied covenant of good faith and fair dealing is **dismissed without leave to amend**;
- Slower's Amended Counterclaims for violation of the DTSA and CUTSA are **dismissed with leave to amend only as to damages**;
- Slower's Amended Counterclaim for violation of the UCL is **dismissed with leave to amend only** as to "unlawful" conduct but **not dismissed** as to unfair or fraudulent conduct;  and
- Paragraphs 18-27 of Slower's Amended Counterclaims are **STRICKEN** and may not be re-alleged.

Additionally, Slower may amend only one of its breach of contract counterclaim **or** its CUTSA counterclaim, but not both.  No new parties, defenses or counterclaims may be added.

Slower's second amended counterclaims shall be due, if any, **no later than March 24, 2026**.  The Court hereby **SETS** a **case management conference** for **May 12, 2026** to set an amended case schedule.

**SO ORDERED.**

Dated: March 10, 2026

Susan van Keulen

SUSAN VAN KEULEN
United States Magistrate Judge

United States District Court
Northern District of California

25